UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JEFFREY RIVAS,                                                                        Civil Action No.

                          Plaintiff,
      -against-                                                                             **COMPLAINT**

TESLA, INC., STEPHEN NEUMANN,
JIE LU, MATHEW PEPE, BRITTENY
ADORNATO, LAURA CASHMAN,
and ERICK FLAK
                         Defendants.                             Plaintiff Demands a Trial
                                                                                                              By Jury
------------------------------------------------------------------------X

Plaintiff, JEFFREY RIVAS, (hereinafter referred to as "Plaintiff" or "RIVAS"), by and through her attorneys, **DEREK SMITH LAW GROUP, PLLC,** as and for his Complaint in this action against TESLA, INC., STEPHEN NEUMANN, JIE LU, MATHEW PEPE, BRITTENY ADORNATO, LAURA CASHMAN, and ERICK FLAK (hereinafter collectively referred to as "Defendants"), respectfully alleges as follows upon information and belief:

## NATURE OF THE CLAIMS

1. This action is brought to remedy, *inter alia*, Defendants' unlawful discrimination against Plaintiff with respect to his employment on the basis of race, color, and national origin, along with a hostile work environment, retaliation as a result of Plaintiff's opposition to these unlawful practices, and Defendants' unlawful termination of the Plaintiff as a result of his opposition to these unlawful practices. Through their unlawful and discriminatory conduct, Defendants violated, *inter alia*, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et. seq. ("Title VII"); New York Executive Law, § 290, et seq. ("NYSHRL"); in addition to any and all other causes of action which are alleged and/or can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action involves a Federal Question, because the causes of action asserted herein arise in part under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. seq. ("Title VII"), to remedy violations of the laws of the State of New York based upon federal question and the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated, retaliated, and unlawfully terminated on the basis of his race, color, national origin, as well as a hostile work environment.

3. 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

4. Around June 30, 2022, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") which was dual filed with the Equal Employment Opportunity Commission ("EEOC").

5. On September 22, 2022, Plaintiff filed an Amended Complaint with the NYSDHR and an Amended EEOC Charge of Discrimination.

6. On October 27, 2022, Plaintiff filed a Second Amended Complaint with the NYSDHR and a Second Amended EEOC Charge of Discrimination.

7. Around May 5, 2023, Plaintiff received a notice of right to sue letter from the EEOC.

8. Thus, Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving his notice of right to sue letter.

9. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Eastern District of New York.

## PARTIES

10. Plaintiff is an El-Salvadorian male resident of Suffolk County, New York.

11. At all times material, Tesla, Inc. (hereinafter referred to as "Tesla") is a domestic business corporation duly existing by the virtue and laws of the State of New York that does business in the State of New York.

12. At all times material, Stephen Neumann (hereinafter referred to as "Neumann") was a Vehicle Readiness Specialist for Defendant. Neumann held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties.

13. At all times material, Jie Lu (hereinafter referred to as "Lu") was a Senior Vehicle Movement Specialist for Defendant. Lu held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties.

14. At all times material, Mathew Pepe (hereinafter referred to as "Pepe") was a Service Manager for Defendant. Pepe held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Pepe held the power to hire and fire Plaintiff.

15. At all times material, Britteny Adornato (hereinafter referred to as "Adornato") was an Operations Manager for Defendant. Adornato held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Adornato held the power to hire and fire Plaintiff.

16. At all times material, Laura Cashman (hereinafter referred to as "Cashman") was a Human Resources Partner for Defendant. Cashman held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Cashman held the power to hire and fire Plaintiff.

17. At all times material, Erick Flak (hereinafter referred to as "Flak") was a Tesla Advisor for Defendant and held supervisory authority over Plaintiff, controlling many of his job duties.

18. Upon information and belief, at all times relevant to this Complaint, Tesla meets the definition of an "employer" and employed at least fifteen (15) persons.

## FACTUAL ALLEGATIONS

19. Around August 30, 2021, Defendant Tesla hired Plaintiff as a Vehicle Readiness Specialist.

20. Around August 31, 2021, Defendant's Vehicle Readiness Specialist Stephen Neumann asked Plaintiff where he lived. In response, Plaintiff informed Neumann that he lived in Brentwood.

21. In reply, Defendant's Vehicle Readiness Specialist Neumann turned to Plaintiff and replied with apparent disgust, "BRENTWOOD IS THE EPITOME OF WHAT'S WRONG WITH LONG ISLAND." This comment made Plaintiff extremely uncomfortable because Brentwood is known as a predominately Black and Hispanic community.

22. Thereafter, Defendant's Vehicle Readiness Specialist Neumann began treating Plaintiff differently, including making racist remarks such as calling Plaintiff, "MEXICAN," even after Plaintiff explained that he was from El-Salvador and was not Mexican.

23. Around September 8, 2021, Defendant's Vehicle Readiness Specialist Neumann pulled Plaintiff aside and told him that he needed to stay late and work additional overtime. In response, Plaintiff indicated that he would try to work as much overtime as possible, but that it might be difficult to work beyond his scheduled shift times, due to childcare issues.

24. However, Defendant's Vehicle Readiness Specialist Neumann ignored Plaintiff's childcare concerns and told Plaintiff that his request was mandatory and if Plaintiff did not comply, he would report him to Defendant's Service Desk Manager Mike Dugan at the end of the quarter to "TRIM THE FAT." Thus, Plaintiff understood this remark to mean that Neumann was directly threatening his employment with Defendant.

25. Thereafter, on days that Plaintiff worked with Defendant's Vehicle Readiness Specialist Neumann and Defendant's Vehicle Readiness Specialist John Muraca ("Muraca"), they would abuse their working relationship with Plaintiff.

26. By way of example, Defendant's Vehicle Readiness Specialist Neumann and Defendant's Vehicle Readiness Specialist Muraca often left Plaintiff to work alone on projects that were meant to be a collective effort, prohibited Plaintiff from working on light-colored cars that were easier to detail, forced Plaintiff to clean up the work station by himself, and instructed Plaintiff to only spend one hour to detail a vehicle, even though Mr. Muraca would spend more than two hours and Neumann spent several days detailing the same vehicle.

27. Around September 27, 2021, Plaintiff complained to Defendant's Service Manager Mathew Pepe about the discrimination and hostile work environment that he had been forced to endure.

28. Around September 28, 2021, Plaintiff met with Defendant's Human Resource Representative Rama Chara ("Chara") and reiterated his concerns regarding the discrimination and hostile work environment he had been forced to endure the past few weeks.

29. Unfortunately, the hostile work environment continued unabated. By way of example, Plaintiff was paid less than other white and non-Hispanic employees. Further, Plaintiff was passed over for raises and denied promotions that were given to white and non-Hispanic employees that were less qualified and had less experience than Plaintiff.

30. Additionally, after that meeting, employees began derogatively calling Plaintiff both a "SNITCH" and "HR" for seeking to protect his rights and complaint about unlawful discrimination and harassment in the workplace.

31. Around November 1, 2021, received his inspectors license and showed it to some of his coworkers. After looking at Plaintiff's picture, Senior Vehicle Movement Specialist Jie Lu

("Lu") and Vehicle Readiness Specialist Neumann told Plaintiff that he looked like an "MS-13 GANG MEMBER," before continuing to make fun of Plaintiff's appearance.

32. Around May 31, 2022, Plaintiff was left alone outside working in the extreme heat without access to air conditioning or water. Defendant's General Manager Rainey Morgan ("Morgan") told Plaintiff that the doors had to stay locked, so the air conditioning would not escape.

33. Defendant promised Plaintiff that they would provide cold water in coolers, while he worked outside, but they failed to provide water.  By midday, the heat became stifling and overwhelming.  Plaintiff tried to enter the building to cool off, but employees kept closing and locking the doors.

34. Eventually, Plaintiff managed to enter the building and immediately threw up in the bathroom due to extreme dehydration. Thereafter, Plaintiff left work and headed home only to learn that white and non-Hispanic employees were working in teams and provided water by Defendant.

35. Around June 27, 2022, Plaintiff requested a meeting with Defendant's Human Resources Partner Laura Cashman ("Cashman") to discuss the ongoing harassment and discrimination that he was experiencing as well as scheduling issues with his manager.

36. Specifically, Plaintiff told Defendant's Human Resources Partner Cashman that Vehicle Readiness Specialist Neumann and Senior Vehicle Movement Specialist Lu regularly referred to Plaintiff as "NIGGA" and that he constantly asked them to stop, but they would not listen.

37. In response, Defendant's Human Resources Partner Cashman completely ignored Plaintiff's discrimination and harassment concerns, and only offered to arrange a meeting with Plaintiff's manager to address his scheduling issues. In short, Defendant completely failed to offer any immediate or reasonable action to help combat the hostile work environment.

38. Around June 30, 2022, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") which was dual filed with the Equal Employment Opportunity

Commission ("EEOC"), due to the ongoing discrimination and hostile work environment that he was forced to endure in the workplace.

39. Around July 24, 2022, Defendant's Tesla Advisor Erick Flak ("Flak") approached Plaintiff about cleaning a loaner car for the service department. In response, Plaintiff indicated that he was working on a time-sensitive task, but would help him as soon as possible.

40. In reply, Defendant's Tesla Advisor Flak called Plaintiff, a "STUPID SPIC." Plaintiff was shocked and could not believe what he just heard.

41. Afterwards, Plaintiff asked Defendant's Tesla Advisor Flak to repeat himself. In response, Flak doubled down and called Plaintiff a "STUPID SPIC" before walking away.

42. Around August 4, 2022, despite never receiving any previous disciplinary warnings, Defendant's Operations Manager Britany Adornato issued Plaintiff a final written warning falsely claiming that he had not maintained his composure during a conversation regarding their attendance policy a few weeks earlier.

43. Additionally, Defendant's Operations Manager Britany Adornato refused to provide Plaintiff his most recent performance review, which he was supposed to receive.

44. Around August 5, 2022, Plaintiff began drafting an email to Human Resources. However, before Plaintiff could complete the email, Defendant's Vehicle Readiness Specialist Neumann walked over to Plaintiff, looked him in the eye, and unplugged his work computer. As a result, Plaintiff needed to complete that email on his phone.

45. Thereafter, Plaintiff emailed Defendant's Human Resources Partner Cashman and complained that he was being retaliated against for previously complaining about discrimination and harassment issues with Human Resources.

46. Specifically, Plaintiff explained that he was "BEING RETALIATED AGAINST FOR BRINGING UP ISSUES OF DISCRIMINATION, RETALIATION, INTIMIDATION,

FORCED OVERTIME, HARASSMENT, SAFETY CONCERNS, AND THREATS FROM MANAGEMENT." Further, Plaintiff reiterated that he had previously been called "MEXICAN, MS-13 GANG MEMBER, SPIC, and NIGGA WHILE THE MANAGEMENT DIDN'T DO ANYTHING TO STOP IT."

47. A few minutes after sending that email, Plaintiff met with Defendant's Service Manager Pepe, who sent him home from work claiming that certain unidentified coworkers felt uncomfortable around him, after Plaintiff expressed safety concerns about performing technician services without the proper training and requested to perform the job duties he was originally hired to perform, such as cleaning and detailing cars.

48. In response, Plaintiff explained to Defendant's Service Manager Pepe that he legitimately felt uncomfortable due to the underlying discrimination and harassment at work.

49. Further, Plaintiff expressed that he felt he was being retaliated against. Nonetheless, Defendant's Service Manager Pepe chose to send Plaintiff home.

50. On September 22, 2022, Plaintiff filed an Amended Complaint with the NYSDHR and an Amended EEOC Charge of Discrimination, due to the ongoing discrimination, retaliation, and hostile work environment that he was forced to endure in the workplace.

51. On October 27, 2022, after receiving notice of Plaintiff's protected complaint with both the EEOC and the NYSDHR, Defendant's Human Resources Partner Cashman spoke with Plaintiff and wrongfully terminated his employment.

52. Ultimately, Defendant discriminated against Plaintiff due to his race, color, and national origin, together with subjecting him to a hostile work environment, retaliation, and an unlawful termination.

53. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

54. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments including extreme anxiety and severe depression.

55. As a result of Defendant's unlawful and discriminatory actions, Plaintiff became so physically and emotionally distressed that he is having difficulty eating and sleeping.

56. As a result of Defendant's unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to his professional reputation.

57. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation, which such employment entails.

58. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

59. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

60. The above are just some of the examples of unlawful discriminatory and retaliatory conduct to which Defendant subjected Plaintiff.

61. Plaintiff claims unlawful discharge and also seeks reinstatement.

62. Defendant's conduct constitutes a continuing violation. Plaintiff claims a continuous practice of discrimination and claims a continuing violations and makes all claims herein under the continuing violations doctrine.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (NOT AGAINST INDIVIDUAL DEFENDANTS)

63. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

64. Title VII states in relevant part as follows:

    (a) Employer practices: It shall be an unlawful employment practice for an employer:

    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

65. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendant Tesla. Among other discriminatory comments and conduct, Defendant Tesla discriminated against Plaintiff on the basis of his race, color, national origin, and created a hostile work environment.

66. Plaintiff complains of Defendant Tesla's violations of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, color, and national origin.

67. Defendant Tesla engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by harassing and otherwise discriminating against Plaintiff as set forth herein.

68. Defendant Tesla violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
**(NOT AGAINST INDIVIDUAL DEFENDANTS)**

69. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

70. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

71. Defendant Tesla engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to their unlawful employment practices.

72. Defendant Tesla violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION**
**FOR HOSTILE WORK ENVIRONMENT UNDER TITLE VII**
**(NOT AGAINST INDIVIDUAL DEFENDANTS)**

73. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

74. Title VII of the Civil Rights Act of 1964, as amended, also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

75. Defendants' conduct occurred because of Plaintiff's protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe

that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

76. Further, the discriminatory conduct and comments directly refers to Plaintiff's race, color, and national origin, and filled the environment of Plaintiff's work area.

77. Additionally, the discriminatory conduct and comments were emotionally damaging and caused Plaintiff to sustain severe emotional distress resulting in physical illness.

78. Plaintiff subjectively regarded the discriminatory and derogatory comments and conduct as unwelcome, unwanted, and objectively opposed said conduct.

79. As a result of these violations, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

80. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

81. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

82. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his race, color, and national origin, as well as creating a hostile work

environment and unlawfully terminating the Plaintiff based on his membership in the aforementioned protected classes.

83. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

84. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

85. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

86. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

87. Defendants engaged in an unlawful discriminatory practice by retaliating, unlawfully terminating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

88. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

89. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

90. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

91. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

92. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

93. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

94. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Date:   August 3, 2023
        New York, New York

Respectfully Submitted,

**DEREK SMITH LAW GROUP, PLLC.**

*Attorneys for Plaintiff*

BY:   __/s/ Daniel Altaras_____
      Daniel Altaras, Esq.
      One Pennsylvania Plaza, Suite 4905
      New York, New York 10119
      (212) 587-0760